## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------

SHIVA STEIN,                                      :
                                                  :
        Plaintiff,     :  Civil Action No. _____
                                                  :
v.                                                :
                                                  :  **COMPLAINT FOR VIOLATIONS OF**
ANIXTER INTERNATIONAL INC.,                       :  **SECTIONS 14(a) AND 20(a) OF THE**
SAMUEL ZELL, LORD JAMES BLYTH,                    :  **SECURITIES EXCHANGE ACT OF**
FREDERIC F. BRACE, LINDA WALKER                   :  **1934**
BYNOE, ROBERT J. ECK, WILLIAM A.                  :
GALVIN, F. PHILIP HANDY, MELVYN N.                :  **JURY TRIAL DEMANDED**
KLEIN, JAMIE MOFFITT, GEORGE                      :
MUÑOZ, SCOTT R. PEPPET, VALARIE L.                :
SHEPPARD, WILLIAM S. SIMON,                       :
CHARLES M. SWOBODA,                               :
                                                  :
        Defendants.   :

---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Anixter International Inc. ("Anixter or the "Company") and the members of Anixter's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Anixter by WESCO International, Inc. ("WESCO"), a Delaware corporation.

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Form S-4 Registration Statement (the "Registration Statement") to be filed on February 7, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Warrior Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of WESCO, will merge with and into Anixter with Anixter surviving the merger and becoming an indirect wholly-owned subsidiary of WESCO (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Anixter common share issued and outstanding will be converted into the right to receive (i) $70.00 in cash; (ii) 0.2397 shares of WESCO common stock, subject to adjustment pursuant to the terms of the Merger Agreement (the "Common Stock Consideration"); and (iii) 0.6356 depositary shares (the "Depositary Shares"), each representing a 1/1,000th interest in a share of newly issued WESCO Series A fixed-rate reset cumulative perpetual WESCO preferred stock, $25,000 stated amount per whole preferred share (the "WESCO Series A Preferred Stock"), subject to adjustment pursuant to the terms of the Merger Agreement (the "Preferred Stock Consideration," and together with the Common Stock Consideration, the "Stock Consideration," and the Stock Consideration together with the Cash Consideration, the "Merger Consideration").

3.      As discussed below, Defendants have asked Anixter stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses

conducted by the financial advisors of the Company, Centerview Partners LLC ("Centerview") and Wells Fargo Securities, LLC ("Wells Fargo"), in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Anixter stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Anixter in incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Anixter common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Samuel Zell has served as a member of the Board since 1984 and as the Company's Chairman of the Board since 1985.

11.     Individual Defendant Lord James Blyth has served as a member of the Board since 1995.

12.     Individual Defendant Frederic F. Brace has served as a member of the Board since 2009.

13.     Individual Defendant Linda Walker Bynoe has served as a member of the Board since 2006.

14.     Individual Defendant Robert J. Eck has served as a member of the Board since 2008.

15.     Individual Defendant William A. Galvin has served as a member of the Board since 2018 and is currently the Company's President and Chief Executive Officer and has been since July 2018.

16.     Individual Defendant F. Philip Handy has served as a member of the Board since 1986.

17.     Individual Defendant Melvyn N. Klein has served as a member of the Board since 1985.

18.     Individual Defendant Jamie Moffitt has served as a member of the Board since 2018.

19.     Individual Defendant George Muñoz has served as a member of the Board since 2004.

20.     Individual Defendant Scott R. Peppet has served as a member of the Board since 2014.

21.     Individual Defendant Valarie L. Sheppard has served as a member of the Board since 2015.

22.     Individual Defendant William S. Simon has served as a member of the Board since 2019.

23.     Individual Defendant Charles M. Swoboda has served as a member of the Board since 2019.

24.     Defendant Anixter is incorporated in Delaware and maintains its principal offices at 2301 Patriot Boulevard Glenview, Illinois 60026.  The Company's common stock trades on the New York Stock Exchange under the symbol "AXE."

25.     The defendants identified in paragraphs 10-23 are collectively referred to as the "Individual Defendants" or the "Board."

26.     The defendants identified in paragraphs 10-24 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

27.     Anixter distributes enterprise cabling and security solutions, electrical and electronic wire and cable solutions, and utility power solutions worldwide. The Company operates through Network & Security Solutions (NSS), Electrical & Electronic Solutions (EES), and Utility Power Solutions (UPS) segments. The NSS segment offers copper and fiber optic cable and connectivity, access control, video surveillance, intrusion and fire/life safety, cabinet, power, cable management, wireless, professional audio/video, voice and networking switches, and other ancillary products for the technology, finance, transportation, education, government, healthcare,

and retail industries, as well as telecommunications service providers. The EES Solutions segment provides electrical and electronic wires and cables, shipboard cables, support and supply products, low-voltage and instrumentation cables, industrial communication and control products, security cables, connectors, industrial Ethernet switches, and voice and data cables to the commercial and industrial, and original equipment manufacturer markets. The UPS segment supplies electrical transmission and distribution products, power plant maintenance, repair and operations supplies, and smart-grid products, as well as arranges materials management and procurement outsourcing for the power generation and transmission, and electricity distribution industries. The Company serves contractors, installers, system integrators, value-added resellers, architects, engineers, and wholesale distributors in various industries, including manufacturing, resource extraction, telecommunications, Internet service providers, finance, education, healthcare, retail, transportation, utilities, and defense, as well as government customers. The Company was formerly known as Itel Corporation. Anixter was founded in 1957 and is headquartered in Glenview, Illinois.

28.     On October 30, 2019, an affiliate of  Clayton, Dubilier & Rice and Anixter jointly announced that they had entered into a proposed transaction:

> GLENVIEW, Ill.--(BUSINESS WIRE)-- Anixter International Inc. (NYSE: AXE), a leading global distributor of Network & Security Solutions, Electrical & Electronic Solutions and Utility Power Solutions, has entered into a definitive agreement with an affiliate of Clayton, Dubilier & Rice ("CD&R") to be acquired in an all cash transaction valued at approximately $3.8 billion. The transaction will result in Anixter becoming a private company and is expected to close by the end of the first quarter of 2020.
>
> Under the terms of the merger agreement, CD&R-managed funds will acquire all of the outstanding shares of Anixter common stock for $81.00 per share in cash. This represents a premium of approximately 13% over Anixter's closing price on October 29, 2019, and a premium of approximately 27% over the 90-day

volume-weighted average price of Anixter's common stock for the period ended October 29, 2019.

"We believe this transaction is in the best interest of Anixter and our stockholders," said Bill Galvin, Anixter's President and Chief Executive Officer. "After careful and thorough analysis, together with our independent advisors, our Board of Directors unanimously approved this transaction with CD&R, which has a strong reputation and a track record of success in helping industrial distributors, like Anixter, prosper and grow. We are also pleased that this transaction appropriately recognizes the value of Anixter's customer relationships, technology and solutions, financial management and global market position. It's a great outcome for Anixter's employees, customers and partners. As a private company, we believe Anixter will have greater flexibility to focus on and accelerate our long-term strategic priorities."

Nate Sleeper, Partner at CD&R, said, "Anixter is an exceptionally well-positioned industrial distributor with leading market positions and differentiated capabilities that deliver strong customer value. We look forward to partnering with the outstanding management team, led by Bill Galvin, on initiatives to grow the business and further strengthen its competitive position while maintaining Anixter's distinctive culture grounded in operational excellence, innovation, and an unwavering commitment to the company's employees, customers, and global partners."

It is anticipated that upon completion of the transaction, Bill Galvin, along with other members of Anixter's executive management team, will continue to lead the company. Anixter's Board of Directors has unanimously approved the agreement with CD&R and recommends that Anixter stockholders approve the proposed merger and merger agreement. Anixter expects to hold a Special Meeting of Stockholders to consider and vote on the proposed merger and merger agreement as soon as practicable after the mailing of the proxy statement to its stockholders.

The transaction is subject to the approval of Anixter's stockholders, regulatory approvals and other customary closing conditions. The transaction has fully committed financing and is not subject to any condition with regard to the financing. Equity financing will be provided by Clayton, Dubilier & Rice Fund X, L.P., an approximately $10 billion pool of equity capital managed by CD&R; committed debt financing has been obtained from Bank of America, J.P. Morgan, Deutsche Bank Securities Inc. and Credit Suisse. Certain stockholders of Anixter, including entities

associated with Sam Zell, Chairman of the Anixter Board, which own approximately 9% of the outstanding shares of Anixter common stock, have entered into a voting agreement with CD&R, pursuant to which they have agreed, among other things, to vote their shares of Anixter common stock in favor of the merger.

Under the terms of the merger agreement, Anixter may solicit superior proposals from third parties for a period of 40 calendar days continuing through December 9, 2019. In accordance with the merger agreement, Anixter's Board of Directors, with the assistance of its advisors, intends to solicit superior proposals during this period. In addition, Anixter may, at any time, subject to the provisions of the merger agreement, respond to unsolicited proposals that are reasonably likely to result in a superior proposal. Anixter advises that there can be no assurance that the solicitation process will result in an alternative transaction. To the extent that a superior proposal received prior to December 9, 2019 or, in certain circumstances, 10 days thereafter leads to the execution of a definitive agreement, Anixter would be obligated to pay a $45 million break-up fee to CD&R. Anixter does not intend to disclose developments with respect to this solicitation process unless and until it determines it is appropriate to do so.

Centerview Partners LLC is serving as lead financial advisor, Wells Fargo Securities, LLC is also serving as financial advisor and Sidley Austin LLP is serving as legal advisor to Anixter in connection with the transaction. BofA Securities, J.P. Morgan Securities LLC, Deutsche Bank Securities Inc. and Credit Suisse are serving as financial advisors to CD&R, and Debevoise & Plimpton LLP is serving as legal advisor to CD&R.

29.     A month-long bidding war ensued. On December 24, 2019, WESCO originally offered to acquire Anixter for $90 per share, but two days later raised its bid to $93.50 per share, which included $63 per share in cash after CD&R showed interest. CD&R, on January 2, 2020, then raised its bid to $93.50 per share in cash, and WESCO, the following day, increased its bid to $97 per share, which included $63 per share in cash. WESCO than sweetened the deal to a total of $100 per share, which the Anixter Board determined was fair. CD&R then terminated its bid.

30.     It is therefore imperative that Anixter's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully

assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

31.      On February 7, 2020, Anixter filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Anixter Financial Projections*

32.      The Registration Statement fails to provide material information concerning financial projections by Anixter management and relied upon by Centerview and Wells Fargo in their analyses. The Registration Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Registration Statement at 83. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Anixter management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they

cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

33.     For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted Net Income, Adjusted EBITDA, and Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 84.

34.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

35.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

36.    Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

37.    With respect to Centerview's *Selected Public Company Analysis* for the Company, the Registration Statement fails to disclose the inputs and assumptions underlying the selection of the 2020 EV/adjusted EBITDA Multiples ranging from 7x to 8x. Registration Statement at 90.

38.    With respect to Centerview's *Selected Precedent Transactions Analysis* for the Company, the Registration Statement fails to disclose the inputs and assumptions underlying the selection of the EV/LTM adjusted EBITDA Multiples ranging from 7.5x to 10.0x. Registration Statement at 91-92.

39.    With respect to Centerview's *Discounted Cash Flow Analysis* for the Company, the Registration Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 9.25% to 11.25%; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 1.5% to 2.5%; (iv) the number of fully-diluted shares of Company common stock outstanding; and (v) risk-adjusted, after-tax unlevered free cash flow of the Company. Registration Statement at 92-93.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

40.     With respect to Centerview's *Selected Public Company Analysis* for WESCO, the Registration Statement fails to disclose the inputs and assumptions underlying the selection of the 2020 EV/adjusted EBITDA Multiples ranging from 7x to 8x. Registration Statement at 93-94.

41.     With respect to Centerview's *Discounted Cash Flow Analysis* for WESCO, the Registration Statement also fails to disclose: (i) the projected terminal values; (ii) the inputs and assumptions underlying the range of discount rates ranging from 9.25% to 11.25%; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 1.5% to 2.5%; (iv) the number of fully-diluted shares of WESCO common stock outstanding; and (v) risk-adjusted, after-tax unlevered free cash flow. Registration Statement at 94.

42.     With respect to Wells Fargo's *Selected Public Companies Analysis*, the Registration Statement fails to disclose the inputs and assumptions underlying the selection of the FY2020E EBITDA Multiples ranging from 7.3x to 9.3x. Registration Statement at 99.

43.     With respect to the Wells Fargo's *Selected Transactions Analysis*, the Registration Statement fails to disclose the inputs and assumptions underlying the selection of the multiples range of 8.0x to 10.5x to Anixter's LTM EBITDA as of September 30, 2019. Registration Statement at 100.

44.     With respect to Wells Fargo's *Discounted Cash Flow Analysis*, the Registration Statement also fails to disclose: (i) the projected terminal values; (ii) the inputs and assumptions underlying the range of discount rates ranging from 9.50% to 11.50%; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 1.50% to 2.5%; and (iv) projected unlevered free cash flow of the Company and WESCO. Registration Statement at 100-01.

45.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

48.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, financial analyses that were prepared by Centerview and Wells Fargo and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

50.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

51.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Anixter within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Anixter, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Anixter, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Anixter, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

56.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 11, 2020

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
_____
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*